port. I am satisfied, not only from the affidavits, but from the course of business, that during the whole time referred to in what the city calls a leasing agreement the Transportation Company was occupying a portion of Pier 26, and such occupation consisted not only, nor indeed principally, in having a steamship lying alongside, but in using a convenient portion of the pier for cargo that had been unladen, or which it was intended to put on board.

It was admitted at argument (and is perfectly plain) that no written document exists which can be called a lease from Steamship Company to Transportation Company. Thus the question becomes merely this, viz.: Does the course of business and all the spoken words of plaintiff's officers evidence an intent (carried into practice) of leasing to Transportation Company? As above indicated, there is nothing in the course of business per se to show a lease. A fleet of vessels, one after the other, might lie at the same berth for years, and the owner of the fleet might have an exclusive right of berthing and paying wharfage; but that business would not make him a lessee. It is all a question of intent, and I am wholly unable to perceive any such intent from these affidavits.

As above stated, however, I am regretfully convinced that there is much ill feeling between plaintiff and Transportation Company, and that ill feeling has not been lessened by the not definitely stated, but clearly discernible, fact that this whole trouble has arisen because Transportation Company went to the commissioner of docks, or the commissioner of accounts, or both, and enlisted him or them on its side of a purely private controversy. But it does not appear, nor has it been suggested in argument, that if Transportation Company had continued to pay wharfage at going rates to Steamship Company, the latter would not have been glad to have its wharf property used at such rates. It is to be feared now (to speak plainly) that from anger plaintiff will seek to prevent Transportation Company from using that which it did use down to August 1 last.

It will therefore be ordered that defendants be enjoined as prayed for pendente lite; that the bond heretofore given under Judge Knox's order will be continued in compliance with the act of Congress; but that as a condition of obtaining this relief plaintiffs will suffer and permit Transportation Company, upon making payment at a just rate— apparently $200 per day—to continue to use the wharf space which it did use on July 30, 1921, until the further order of this court.

---

### OLD DOMINION S. S. CO. v. CITY OF NEW YORK et al.

(Circuit Court of Appeals, Second Circuit. November 21, 1922.)

#### No. 25.

Appeal from the District Court of the United States for the Southern District of New York.

Action by the Old Dominion Steamship Company against the City of New York and another. From a decree ordering injunction pendente lite to issue (286 Fed. 155), defendants appeal. Decree affirmed.

John P. O'Brien, Corp. Counsel, of New York City (Charles J. Nehrbas, of New York City, of counsel), for appellants.

Loomis & Jones, of New York City, for respondent.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

PER CURIAM. Decree affirmed.

---

## CHURCHWARD INTERNATIONAL STEEL CO. v. CARNEGIE STEEL CO.

(District Court, W. D. Pennsylvania. March 16, 1912.)

1. Equity ⊜═359—Whether defendant has substantial interest, preventing voluntary discontinuance, is matter of discretion.

While it is the general rule in equity, as at law, that plaintiff may withdraw or discontinue his suit on payment of costs, subject only to the qualification that the discontinuance shall not deprive defendant or others of any right, or have the effect of harassing or inconveniencing them, it is a matter of discretion with the chancellor whether defendant has a substantial interest which may be affected.

2. Patents ⊜═313—Leave to discontinue infringement suit without prejudice denied, where defendant had gone to great expense in preparing defense.

In suit for infringement of patent, in which defendant set up invalidity for lack of patentable novelty, want of invention by the patentee, and prior use, where defendant afforded complainant every opportunity to examine its engineers, superintendents, and foremen with a view to discovering infringement, and had gone to great trouble and expense to prepare its defense, complainant will not be given leave to withdraw or discontinue the action without prejudice to a new suit at any time when it can obtain more specific and complete information of defendant's methods of manufacture.

In Equity. Suit by the Churchward International Steel Company against the Carnegie Steel Company. On motion by plaintiff for leave to discontinue without prejudice. Motion denied.

Duell, Warfield & Duell, of New York City, for complainant.

Charles C. Linthicum, of New York City, for respondent.

ORR, District Judge. In each of the above cases the plaintiff has moved the court for leave to discontinue the proceedings without prejudice and the defendant has objected thereto. Each proceeding is for infringement of letters patent for certain alleged improvements in heat treatment of alloyed steel.

In support of its motion the plaintiff has filed an affidavit to the effect that, in endeavoring to prove defendant's infringement before the date of the bill filed, complainant caused to be examined certain officers of the defendant company, but that complainant was not able to have produced any definite information as to the methods employed by the defendant in the manufacture of steel prior to the date of the filing of the bills. The affidavit further contains the averment that no testimony was taken by the defendant, that no decree or order has been entered in the case, and that no cross-bill or prayer for affirmative relief has been filed on behalf of the defendant, and the affidavit fur-

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes